46 So.2d 170 (1950)
ROSPIGLIOSI
v.
CLOGHER.
Supreme Court of Florida, Division A.
May 5, 1950.
Rehearing Denied May 31, 1950.
*171 Murrell, Fleming & Flowers, Miami, DeCostas, Maer & Floyd, Miami, for appellant.
Bernstein & Hodsdon, Miami, for appellee.
THOMAS, Justice.
Dudley J. Clogher sued Jennie E. Clogher, claiming he and she had formed a common-law union and had lived together as man and wife for more that two years afterward, when the defendant deserted. Soon after their contracted marriage, so it was alleged, they agreed verbally that the defendant would furnish the money and the plaintiff, who was associated with a brokerage house and experienced in stock market operations, would contribute his skill in a partnership to deal in stocks, the profits to be divided equally between them.
About the time of the alleged desertion an accounting was had, and the parties stipulated in writing that their partnership be dissolved and that there was due the plaintiff $38,400 which would be paid $19,700 cash and $18,700 in two instalments within a few weeks. The first payment was made; the deferred payments were not.
The plaintiff prayed that he be granted a divorce; that the defendant surrender certain paintings of his which it was charged she retained; and that the sum of the two unpaid instalments of the balance struck in their accounting be declared a lien on the brokerage account.
Five days after the appellee's bill was filed he was made defendant in a bill in which Elizabeth Rospigliosi  she and the appellant, Jennie E. Clogher, are the same person  claimed he had withdrawn large sums of money from the common bank and brokerage accounts, and sought an accounting and recovery of sums found to be due her. The causes were consolidated, and eventually the chancellor decreed that the parties had never been married, hence the divorce should be denied; that the defendant deliver the paintings to the plaintiff; that the defendant pay to the plaintiff $18,700, the unpaid balance he claimed.
Of the three phases of the controversy, one, anent the return of the paintings, need *172 not be further mentioned. As to the other two aspects, the appellant challenges the judgment, while the appellee questions the finding that no marriage existed.
The appellant insists that the judgment was improperly entered because the partnership was invalid from its inception, having been formed in contravention of a rule of the New York Stock Exchange that no registered employee of a member of the exchange could have an interest in a customer's account. Parenthetically, the appellee was an employee of the firm through which he and the appellant traded.
The appellant, citing us 15 U.S.C.A. § 78e et seq., indulges in the following reasoning: Under 15 U.S.C.A. § 78e no exchange may do business without registering with the Securities and Exchange Commission; one condition for registration is that the exchange shall furnish the commission copies of its rules  15 U.S.C.A. § 78f; no registration will be granted  15 U.S.C.A. § 78f(b)  "unless the rules of the exchange include provision for the * * * disciplining of a member for conduct * * * inconsistent with just and equitable principles of trade, and declare that the willful violation of any provisions of this chapter or any rule or regulation thereunder shall be considered conduct" of such character; under a following section  78f(d)  if it appears to the commission that the applicant is so organized as "to be able to comply with the provisions of this chapter and the rules and regulations thereunder" and that its rules are adequate to insure fair dealing, it may be registered; the agreement between the appellant and the appellee was void because of a later section  15 U.S.C.A. § 78cc(a)  that any stipulation "binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void"; under paragraph (b), a contract in violation of "any provision of this chapter or of any rule or regulation thereunder, and every contract * * * the performance of which involves the violation of * * * any provision of this chapter or any rule or regulation thereunder, shall be void." (Emphasis supplied.)
In short, insists appellant, no exchange can operate until it is authorized by the Securities and Exchange Commission, and to secure that authorization it must present rules designed to insure fair dealing, and, to quote appellant's brief, "to protect investors." To continue, a rule of the New York Stock Exchange prohibits an employee from being interested in a customer's account, so the appellee, an employee of the broker, having been interested in the account of a customer, his supposed wife, the above statute was violated and the contract was therefore void.
Taking the sections of the Federal statutes we have quoted in their order, without referring to them particularly, and tracing the effect of them as it is plain to us, we agree, of course, that no exchange may operate without the sanction of the Securities and Exchange Commission, and to obtain that privilege it must submit copies of the rules under which its transactions are to be governed. These rules must contain provisions for the disciplining of members for conduct that is not consistent with just and equitable principles of trade, and they must declare positively that the wilful violation of any provision of the chapter  that is, 15 U.S.C.A. § 78a et seq.  or rule or regulation under that chapter shall be considered conduct of such character. But that does not mean that any rule or regulation which the exchange considers necessary to insure fair dealing automatically becomes a rule under the statute, the violation of which would amount to a transgression of that law. It simply means that the exchange may have as many rules as it considers necessary to just operation, but it must have one that a person guilty of conduct denounced in or under the act as inconsistent with fair dealing will be disciplined.
The provision of the act anent any contract made in violation of any rule "thereunder", and the performance of any contract amounting to the violation of a rule "thereunder," refers distinctly to rules *173 under the chapter and not to rules of an exchange which have been approved by the Securities and Exchange Commission. We are unable to agree with appellant that the rule of the New York Stock Exchange that an employee may not have an interest in a customer's account has such force and dignity that violation of it would be a transgression of the Federal statutes, even though the rule, we must assume, was approved by the Securities and Exchange Commission. If there is any such regulation under the provisions of the act with reference to an employee's interest in a customer's dealings, no one has cited it.
The appellant further insists that the whole contract between the parties was invalid because it constituted a waiver by the appellant of her protection under the rule of the exchange we have already quoted, although she contends "the statute says such a waiver * * * was void." We cannot agree with that position either. This statute  15 U.S.C.A. § 78cc(a)  to quote it again, provides that any "stipulation * * * binding any person to waive compliance with any provision of this chapter or of any rule or regulation thereunder, or of any rule of an exchange required thereby shall be void." In the first place, we have discovered nothing in the record, the contract notwithstanding, to show that there was any stipulation "binding" the appellant to waive any compliance; and, in the second place, the waiver would have to affect a rule under the act itself or a rule of an exchange required by the act, neither of which has been shown under the facts presented to us. (Emphasis supplied.)
Lastly, we cannot ignore the statement in the appellant's brief that the purpose of this rule was the protection of herself as a customer. This but emphasizes our thought that she was not bound to make any waiver even if such a waiver applied to a rule under the act or a rule of the exchange required by the act, but she voluntarily entered into a business venture with a man with whom she proposed to carry out the marriage relationship and, contrary to any idea that unfair advantage was taken of her or that she was victimized, she actually benefited by the enterprise and now seeks to retain more than her share of the profits.
We have examined the second question presented by the appellant  that is, whether there could be visited on the appellee the inhibition against securing in a court of equity relief when he entered the court with hands that were not clean; but our examination of the record does not convince us that his conduct was such that the door of the equity court should have been closed against him.
As for the decree holding that there was in fact no such relationship between the parties as to establish common-law marriage, we have only to say that the testimony was conflicting and there was sufficient evidence, if the master believed it, to sustain that finding; so we are not inclined to disturb the conclusion he reached, which was subsequently confirmed by the chancellor.
The only other point raised was the question of the division of costs between the parties, and we have not been convinced that there was any abuse of discretion; so we shall not disturb that part of the decree.
Affirmed.
ADAMS, C.J., and TERRELL and ROBERTS, JJ., concur.